**In re J.W. WESTCOTT CO.**

**No. 01–CV–74359–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

May 28, 2003.

Thomas P. Branigan, Bowman & Brooke, Troy, MI, Steven Belgrade, George Velcich, Belgrade & O'Donnell PC, Chicago, IL, for Plaintiffs.

Dennis O'Bryan, O'Bryan, Baum, Cohen, Kuebler, Birmingham, MI, Dennis M. O'Bryan, Philip Bohrer, Bohrer Law Firm LLC, Baton Rouge, LA, Henry E. Billingsley, II, Jeffrey A. Healy, Arter & Hadden LLP, Cleveland, OH, for Defendants.

**ORDER DENYING CLAIMANTS' "MOTION FOR SUMMARY JUDGMENT AGAINST SIDSEL KNUTSEN AND ROBERT HULL" AND DENYING "WESTCOTT'S MOTION FOR SUMMARY JUDGMENT ..." AND DENYING "THIRD PARTY DEFENDANT, GREAT LAKES PILOTAGE AUTHORITY'S MOTION FOR DISMISSAL OR ... SUMMARY JUDGMENT"**

CLELAND, District Judge.

Pending before the court is Claimants' "Motion for Summary Judgment Against Sidsel Knutsen and Robert Hull," filed on February 10, 2003, which the Petitioner J.W. Westcott Company joined and

adopted on February 10, and "Third Party Defendant, Great Lakes Pilotage Authority's Motion for Dismissal or, in the Alternative, for Summary Judgment," filed on February 21, 2003. These matters have been extensively briefed,[1] and the court conducted a hearing on the motions on May 12, 2003. For the reasons stated below, the motions will be denied.

## I. GREAT LAKES PILOTAGE AUTHORITY'S MOTION

On January 21, 2003, the J.W. Westcott Company filed an amended third-party complaint against the Great Lakes Pilotage Authority ("GLPA"). The GLPA filed the instant motion for dismissal and/or summary judgment on February 21, 2003. On April 2, 2003, upon stipulation of the parties, the J.W. Westcott Company's complaint against the GLPA was dismissed. (*See* 04/02/03 "Stipulated Order of Dismissal . . .") Thus, the "Third Party Defendant, Great Lakes Pilotage Authority's Motion for Dismissal or, in the Alternative, for Summary Judgment" has been rendered moot and will be denied as such.

## II. CLAIMANTS' MOTION FOR SUMMARY JUDGMENT

### A. CAPTAIN ROBERT HULL

#### 1. Background

In their summary judgment motion, as it relates to Captain Robert Hull, Claimants'

aptly describe the crux of their motion as follows: "The issue is whether a pilot momentarily absenting himself from the bridge for only 90 seconds in restricted waters and instructing the captain to maintain the current course and speed of navigation during his brief absence, constitutes a violation of 46 USCA [§ ] 9302(a)(1)(A)." (Claimants' Mot. at 7.) Because this precise issue has previously been addressed by the court, (*see* 12/31/02 Order), Claimants' instant motion, with respect to Captain Hull, will be treated as a motion for reconsideration.[2]

In the court's December 31, 2002 "Order Denying Claimants' 'Motion for Summary Judgment Against Robert Hull,'" the court found:

> If Congress intended to impose a duty upon pilots in which the pilot was required to never cease steering the vessel, Congress could have used more direct and detailed language. Congress, however, used the phrase, "direct the navigation of the vessel." This phrase does not imply that a pilot must remain at the helm during a vessel's entire trip through designated waters, and Claimants have not provided any support for their proposition that a pilot is no longer "directing the navigation" of a vessel when he instructs another crew member on the proper speed and course of the

---

1. Typically, dispositive motions are presented to the court through three documents: the motion itself, a response to the motion, and a reply. In this case, Claimants' summary judgment motion was presented through no less than seven filings, culminating in a document entitled "Claimants' Reply to Response of Knutsen Produckt Tanker V AS and Captain Robert H. Hull to Claimants' First Supplement to Reply to Defendants' Opposition to the 2/10/03 and 2/19/03 Motions for Summary Judgment of Claimants, Lewis and Nasiatka and Petitioner, Westcott." Claimants alone filed five documents, including a supplement

to their original motion, a seven-page reply, a supplement to their reply, and the above-cited reply to the opposing parties' response to one of Claimants' supplements. Claimants never obtained leave to file any of these documents. Such motion practice is inefficient and confusing.

2. The court finds it troubling that, although the instant motion clearly presents the same issue ruled upon in the court's earlier order, Claimants instant motion and brief do not even mention the previous order.

vessel while the pilot momentarily steps away from the bridge.

(12/31/02 Order at 7.) The court further stated:

> Captain Hull admits to leaving the bridge of the ship while it was progressing up the Detroit River. Nonetheless, he did not fail to direct the navigation of the KNUTSEN [in accordance with 46 U.S.C. § 9302(a)(1)(A) ] during his brief absence. He instructed another captain on the proper course of the ship, and was only one level below the bridge for under two minutes. Based on these facts, the court finds that summary judgment against Captain Hull is unwarranted. Thus, Claimants have not shown that Captain Hull was per se negligent under the Pennsylvania doctrine.

(*Id.* at 8.) Claimants now request reconsideration of this ruling.

## 2. Standard

Rule 7.1(g) of the Local Rules for the Eastern District of Michigan provides that a motion for reconsideration shall be granted only if the movant can (1) "demonstrate a palpable defect by which the court and the parties have been misled" and (2) show that "correcting the defect will result in a different disposition of the case." E.D. Mich. LR 7.1(g)(3). A "palpable defect" is a defect which is obvious, clear, unmistakable, manifest or plain. *Mktg. Displays, Inc. v. Traffix Devices, Inc.*, 971 F.Supp. 262, 278 (E.D.Mich.1997) (citing Webster's New World Dictionary 974 (3d ed.1988)). A motion for reconsideration which presents the same issues already ruled upon by the court, either expressly or by reasonable implication, will not be granted. E.D. Mich. LR 7.1(g)(3); *Czajkowski v. Tindall & Assocs., P.C.*, 967 F.Supp. 951, 952 (E.D.Mich.1997). Finally, a motion for reconsideration must be filed within 10 days after entry of the judgment or order. E.D. Mich. LR 7.1(g)(1).

## 3. Discussion

Claimants' instant motion must be denied because it is untimely, presents the same issue expressly ruled upon by the court, and also fails to allege a palpable defect upon which the court was misled. First, to the extent that the instant motion requests a different ruling as to Hull's liability based upon a per se negligence theory, it is untimely. A motion for reconsideration must be filed within 10 days after entry of the order that a party wishes the court to reexamine. Here, Claimants' motion was filed over two months after the court's December 12, 2002 order denying Claimants' motion for summary judgment against Hull.

Further, Claimants' first motion for summary judgment against Hull, filed on October 31, 2002, presented Claimants' theory that Hull was per se negligence by leaving the bridge of the KNUTSEN, purportedly in violation of 46 U.S.C. § 9302(a)(1)(A). The instant motion presents the exact same theory, but Claimants now point to sections of the Code of Federal Regulations in support of their construction of 46 U.S.C. § 9302(a)(1)(A).[3]

---

**3.** The relevant portions of 33 C.F.R. § 164.11 state:

> The owner, master or person in charge of each vessel underway shall ensure that:
> (a) The wheelhouse is constantly manned by persons who:
> (1) Direct and control the movement of the vessel; and

> (b) Each person performing a duty described in paragraph (a) of this section is competent to perform that duty.
>
> .    .    .    .    .
>
> (F) The danger of each closing visual or each closing radar contact is evaluated and the *person* directing the movement of the vessel knows the evaluation.

Inasmuch as the court has already considered and rejected Claimants' construction, the presentation of the same issue in the instant motion does not warrant the requested relief. *See* E.D. Mich. LR 7.1(g)(3) ("Generally, ... the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication.").

■ Finally, Claimants have not demonstrated a palpable defect upon which the court and parties were misled. Claimants most recent motion simply presents different authority from which Claimants hope the court will conclude that an opposite construction of § 9302(a)(1)(A) is appropriate. Such authority is not only unpersuasive, but falls well short of constituting a palpable defect under E.D. Mich. LR 7.1(g)(3). Accordingly, Claimants motion will be denied with respect to the arguments related to Hull.

## B. SIDSEL KNUTSEN

### 1. Imputed Liability

Claimants next argue that because Robert Hull is per se liable, the Sidsel Knutsen is liable under a theory of imputed liability. Inasmuch as the court has not determined that Captain Robert Hull was liable as a matter of law, Claimants' theory of imputed liability must fail. Accordingly, Claimants' motion for summary judgment against the Sidsel Knutsen will be denied with respect to the theory that the Sidsel Knutsen is liable through imputation.

### 2. Direct Liability Under the Code of Federal Regulations

Claimants also argue that the Sidsel Knutsen is directly liable based upon violations of 33 C.F.R. §§ 164.11 and 164.13. The court, however, agrees with the Sidsel Knutsen that § 164 of the Code of Federal Regulations does not apply to the KNUTSEN.

Under 33 C.F.R. § 164.02, the following exception to the mandates of 33 C.F.R. § 164 applies:

§ 164.02 Applicability exception for foreign vessels.

(a) This part (including §§ 164.38 and 164.39) does not apply to vessels that:

(1) Are not destined for, or departing from, a port or place subject to the jurisdiction of the United States; and

(2) Are in:

(i) Innocent passage through the territorial sea of the United States; or

(ii) Transit through navigable waters of the United States which form a part of an international strait.

33 C.F.R. § 164.02. The court finds that §§ 164.11 and 164.13 do not apply to the KNUTSEN, a foreign vessel departing from and destined for a foreign port, because it was transiting through an international straight at the time of the alleged violations.

First, there is no dispute that the KNUTSEN was not "destined for, or departing from, a port or place subject to the jurisdiction of the United States." § 164.02(a)(1). The deck log of the KNUTSEN confirms that the freighter departed from Mongstad, Norway and called exclusively at Canadian ports until it sailed for the United Kingdom. Thus, so long as the Detroit River qualifies as an "international strait" under § 164.02(a)(2)(ii), the KNUTSEN is exempt from the requirements of § 164.

The parties dispute whether the Detroit River is a river or a straight. The court agrees with the Sidsel Knutsen that the Detroit River qualifies as a straight. A straight is defined as "a comparatively narrow passageway connecting two large bodies of water." Merriam–Webster Dic-

tionary (2003). Conversely, a river is defined as "a natural stream of water of usually considerable volume."[4] *Id.* The Detroit River qualifies as a straight because it is a passageway connecting Lake St. Clair and Lake Erie.[5]

■ Further, the Detroit River can be classified as an *international* strait under § 164.02(a)(2)(ii). Counsel for the Sidsel Knutsen is correct that "[n]either a definition nor clarification of the term 'international strait' [can] be found either in the text of the Code of Federal Regulations or in the legislative history of 33 CFR 164.02." (Def.'s Br. at 16.) Based upon the plain language of the statute, the Detroit River seems to qualify as such a strait. The Detroit River essentially forms the border between the United States and Canada and, moreover, is the location of extensive international shipping traffic.

Despite Claimants' argument to the contrary, the court finds that the 1982 United Nations Convention on the Law of the Sea ("UNCLOS"), 21 I.L.M. 1261 (1982), supports a finding that the Detroit River is an international strait. Article 37 of UNCLOS describes a "normal" international strait as a strait "which [is] used for international navigation between one part of the high seas or an exclusive economic zone and another part of the high seas or an exclusive economic zone." 21 I.L.M. at 1276; *see also* William L. Schachte, Jr. & J. Peter A. Bernhardt, *International Straits and Navigational Freedoms*, 33 Va. J. Int'l L. 527, 537 (1993). Claimants argue that the Detroit River does not fit this definition because the economic zones are the same at both ends of the River. Claimants, however, ignore the fact that the Detroit River is a conduit for navigation between Lake St. Clair and Lake Erie and is an essential link in the chain of Great Lakes. In the context of another statute, the Great Lakes were considered "high seas" by the Supreme Court. *See United States v. Rodgers,* 150 U.S. 249, 253, 14 S.Ct. 109, 37 L.Ed. 1071 (1893).

Accordingly, 33 C.F.R. §§ 164.11 and 164.13 do not apply to the KNUTSEN in this instance because it was a foreign vessel traveling to foreign ports through an international strait.[6] Thus, Claimants' motion for summary judgment will be denied with respect to this argument.

## III. CONCLUSION

IT IS ORDERED that Claimants' "Motion for Summary Judgment Against Sidsel Knutsen and Robert Hull" [Dkt. # 105] and "Westcott's Motion for Summary Judgment . . ." [Dkt. # 104] are DENIED.

IT IS FURTHER ORDERED that "Third Party Defendant, Great Lakes Pilotage Authority's Motion for Dismissal or,

---

**4.** The dictionary definitions, or plain meaning, of the terms "strait" and "river" are not necessarily mutually exclusive. In other words, something could qualify as both a strait and a river under the definitions set forth above.

**5.** In fact, in 1701, Antoine de la Mothe Cadillac established what is now known as Detroit, originally calling it "Fort Ponchartrain du Détroit." "Détroit," meaning "strait" in French, was utilized by the French settlers to describe the location of the new settlement. *See* H. Con. Res. 80, 107th Cong. (2001) (describing the founding and naming of Detroit); *see also* Cassell's French Dictionary (1981).

**6.** Nothing in this order should be construed as a finding as to the location of the marine accident. The parties continue to dispute the actual location of the capsizing and whether it occurred in Canadian or American waters. Thus, absent a factual finding regarding the location of the accident, it is unclear which country's law would apply—including the U.S.Code of Federal Regulations—for evaluating the appropriate standard of care for those on the KNUTSEN's crew.

in the Alternative, for Summary Judgment" [Dkt. #112] is DENIED AS MOOT.